Filed 12/4/13  P. v. Daniels CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RAYMOND WALLACE DANIELS,<br><br>    Defendant and Appellant. | E056841<br><br>(Super.Ct.No. SWF028088)<br><br>**OPINION** |

APPEAL from the Superior Court of Riverside County.  Angel M. Bermudez, Judge.  Affirmed.

Siri Shetty, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Senior Assistant Attorney General, Kristine A. Gutierrez and Eric A. Swenson, Deputy Attorneys General, for Plaintiff and Respondent.

According to his niece, defendant Raymond Wallace Daniels raped her twice, once when she was 7 or 8 and again when she was 12 or 13.

A jury found defendant guilty on two counts of a forcible lewd act on a child under 14. (Pen. Code, § 288, subd. (b)(1).) It acquitted him on two counts of forcible rape (Pen. Code, § 261, subd. (a)(2)) and two counts of aggravated sexual assault on a child by means of rape (Pen. Code, § 269, subd. (a)(1)). Defendant admitted one "strike" prior (Pen. Code, §§ 667, subds. (b)-(i), 1170.12) and one prior serious felony conviction enhancement (Pen. Code, § 667, subd. (a)). As a result, he was sentenced to a total of 37 years in prison, along with the usual fines and fees.

Defendant now contends:

1. The trial court erred by failing to instruct the jury on the lesser included offense of a nonforcible lewd act.

2. The trial court erred by denying defendant's *Romero* motion.[1]

We find no error. Hence, we will affirm.

---

[1]  A "*Romero* motion" is a motion to dismiss a strike prior in the interest of justice. (*People v. Superior Court (Romero)* (1996) 13 Cal.4th 497.)

I

FACTUAL BACKGROUND

Jane Doe[2] was born in 1994. Thus, in 2002, she was 7 or 8 years old; in 2007, she was 12 or 13 years old.

A.    *2002 Incident.*

Defendant is Doe's uncle. As of 2002, he was living with Doe and her parents at their house in Temecula.

One night in 2002, Doe fell asleep on a couch. She awoke to find defendant lying on top of her. He pushed her arms over her head and held them both down with his

---

[2]    The trial court accepted the parties' stipulation that the victim's true name would be used at trial, but that the court reporter would "plac[e] a black line through the name in order to protect the privacy of the victim."

The parties forfeited any objection to this order by stipulating to it. We note, however, that while the prosecution cited Penal Code section 293 in support of this order, that section merely provides that, if the victim of a sex crime so requests, the investigating law enforcement agency shall not disclose the victim's name or address, other than to certain authorized officials. (Pen. Code, § 293, subds. (a), (c), (d).) We do not see how it authorizes the trial court's order here. We also note that the order was not entirely effective, because the court reporter failed to redact several instances of the victim's true name, and the victim's true name also appears in the clerk's transcript.

The more immediate problem, for our purposes, is that the trial court's order did not authorize the use of a fictitious name, such as Jane Doe. (See Pen. Code, § 293.5.) We believe, however, that we have the authority to order that the victim be referred to by a fictitious name in this appeal, not only under Penal Code section 293.5, but also under the long-standing common-law tradition allowing the use of fictitious names to protect privacy. (See *Doe v. Lincoln Unified School Dist.* (2010) 188 Cal.App.4th 758, 766-767.)

We hereby so order.

forearm. His other hand was over her mouth. She tried to "squirm" and "wiggle out" from under him, but she could not.

Her pajama pants had been pulled down. Defendant rubbed his penis against her genitals. It entered her labia majora but not her vagina. He kept telling her, "'Shh,' like over and over again." "[She] asked why, and he said because he loved [her]." Doe started crying. She did not scream because she was "scared."

Afterward, Doe did not tell anybody, and she tried to act "[l]ike nothing happened," because she was afraid that defendant would hurt her or her parents would hurt him.

B.     *2007 Incident*.

Defendant continued to live with Doe's family for a while, then moved out for a while, and then, in 2007, moved back in.

In June 2007, Doe's parents went out of town for a couple of days, leaving Doe in defendant's care. She was asleep in bed when she was awakened by defendant pulling up her nightgown. He pulled her underwear down, then lay on top of her. Again, he pushed her arms over her head. She "br[oke] them free," but defendant put his arm across her chest, "kind of cutting [her] off at [her] forearms with his arms, so there was really nothing [she] could do." Again, he covered her mouth with his hand.

As before, defendant rubbed his penis against her genitals, and it entered her labia majora but not her vagina. She kept telling him to stop. He "kept telling [her] to be quiet and to shut up and just shushing [her] over and over again."

4

Once again, at first, Doe did not tell anyone and tried to act normal because she was scared. Not long afterward, however, defendant moved out and went to live in a cabin on the Pala Indian Reservation. Doe's parents advanced his first and last month's rent.

In July 2007, while at church camp, Doe disclosed the molestation to her best friend. This led to further disclosures — to camp and church officials, to her parents, and eventually to the police. Doe's parents told the police that defendant lived on the Pala campground, but could not give them an address. The case languished because the police could not find defendant until June 2009, when he was located in Missouri and arrested.

C.    *Defense Case.*

Defendant denied that the alleged sex acts ever occurred. In July 2007, when he was first accused of molesting Doe, he was living at a campground near the Pala Indian Reservation. He stayed there until June 2008, when he moved to Missouri for work-related reasons.

Doe always seemed comfortable with defendant and never acted any different around him.

Doe had told the police that in 2002 and 2007, defendant's penis penetrated her vagina and also that, in 2002, he digitally penetrated her.

5

II

FAILURE TO INSTRUCT ON THE LESSER INCLUDED OFFENSE

OF A NONFORCIBLE LEWD ACT

Defendant contends that the trial court erred by failing to instruct the jury on the lesser included offense of a nonforcible lewd act (Pen. Code, § 288, subd. (a)).

"""The trial court is obligated to instruct the jury on all general principles of law relevant to the issues raised by the evidence, whether or not the defendant makes a formal request." [Citations.] "That obligation encompasses instructions on lesser included offenses if there is evidence that, if accepted by the trier of fact, would absolve the defendant of guilt of the greater offense but not of the lesser." [Citations.]' [Citations.] 'Nevertheless, "the existence of '*any* evidence, no matter how weak' will not justify instructions on a lesser included offense . . . ." [Citation.] Such instructions are required only where there is "substantial evidence" from which a rational jury could conclude that the defendant committed the lesser offense, and that he is not guilty of the greater offense. [Citations.]' [Citation.]" (*People v. Whalen* (2013) 56 Cal.4th 1, 68.)

The crime of a nonforcible lewd act merely requires the commission of a lewd and lascivious act, with the requisite intent, on a child under 14. (Pen. Code, § 288, subd. (a).) The crime of a forcible lewd act additionally requires that the act be committed 'by use of force, violence, duress, menace, or fear of immediate and unlawful bodily injury . . . .' Accordingly, a nonforcible lewd act is a lesser included offense of a forcible lewd act. (*People v. Ward* (1986) 188 Cal.App.3d 459, 472.)

6

If the prosecution relies on force, the force must be "'substantially different from or substantially greater than that necessary to accomplish the lewd act itself.' [Citation.]" (*People v. Soto* (2011) 51 Cal.4th 229, 242.)

Restraining the victim constitutes force for purposes of the lewd act statute. For example, in *People v. Alvarez* (2002) 27 Cal.4th 1161, the defendant "plac[ed] his hands upon the sleeping [victim]'s mouth and throat, and ke[pt] them there to restrain and silence her when she awoke and resisted . . . ." (*Id*. at p. 1182.) The Supreme Court held that this was sufficient evidence of force. (*Ibid*.; see also *People v. Mendibles* (1988) 199 Cal.App.3d 1277, 1285-1286, 1307 [erroneous force instruction was harmless where evidence showed that defendant pulled victims back when they tried to get away], disapproved on other grounds in *People v. Soto*, *supra*, 51 Cal.4th at p. 248, fn. 12.)

Here, in the 2002 offense, defendant pushed Doe's arms over her head and pinned them down with his forearm. He also put his hand over her mouth. Likewise, in the 2007 offense, he pushed her arms up over her head. At one point, she managed to get her arms loose, but defendant put one arm across her chest; she testified, "[H]e was kind of cutting me off at my forearms with his arms, so there was really nothing I could do." Once again, he put his hand over her mouth. These acts of restraint involved force that was both substantially different from and substantially greater than the force necessary to accomplish the lewd act itself.

7

Defendant relies on *People v. Schulz* (1992) 2 Cal.App.4th 999 and *People v. Senior* (1992) 3 Cal.App.4th 765.  In *Schulz*, the Sixth District stated:  "We do not regard as constituting 'force' the evidence that defendant grabbed the victim's arm and held her while fondling her.  [Citations.]  The 'force' factor differentiates the charged sex crime from the ordinary sex crime.  Since ordinary lewd touching often involves some additional physical contact, a modicum of holding and even restraining cannot be regarded as substantially different or excessive 'force.'"  (*People v. Schulz*, *supra*, 2 Cal.App.4th at p. 1004.)  It recognized that its holding was "contra" to other cited cases. (*Ibid*.)

In *Senior*, the same Sixth District panel likewise stated, citing *Schulz*:  "We also do not regard as constituting 'force' the evidence that defendant pulled the victim back when she tried to pull away from the oral copulations . . . ."  (*People v. Senior*, *supra*, 3 Cal.App.4th at p. 774.)  Again, it recognized that this was "contra" to other cited cases. (*Ibid*.)

Other courts have refused to follow *Schulz* and *Senior*.  (*People v. Alvarez* (2009) 178 Cal.App.4th 999, 1004 [" . . . *Schulz* is wrong."]; *People v. Neel* (1993) 19 Cal.App.4th 1784, 1786  ["[W]e disagree with the holdings in *Senior* and *Schulz*."], disapproved on other grounds in *People v. Soto*, *supra*, 51 Cal.4th at p. 248, fn. 12; *People v. Babcock* (1993) 14 Cal.App.4th 383, 388  ["dicta" in *Schulz* and *Senior* are "fatal[ly] flaw[ed]"].)  We agree with their criticisms.

8

Finally, in *People v. Bolander* (1994) 23 Cal.App.4th 155, disapproved on other grounds in *People v. Soto*, *supra*, 51 Cal.4th at p. 248, fn. 12, a different panel of the Sixth District expressly repudiated *Schulz* and *Senior*. It labeled their discussions of the force issue "dicta" and "contrary to precedent." (*Bolander*, at p. 159.) It stated: "[W]e respectfully disagree with the interpretation of the 'force' requirement of [Penal Code] section 288, subdivision (b) discussed in *Schulz* and *Senior*." (*Id*. at pp. 160-161.) In the case before it, it held that the "defendant's acts of overcoming the victim's resistance to having his pants pulled down, bending the victim over, and pulling the victim's waist towards him constitute force within the meaning of [Penal Code section 288,] subdivision (b) . . . ." (*Id*. at p. 161; see also *id*. at p. 159.) Accordingly, *Schulz* and *Senior* are no longer good law.

Here, the evidence that defendant restrained the victim's arms was undisputed and unimpeached (except to the extent that defendant denied committing any of the acts that the victim described). Thus, there was no evidence that defendant did commit lewd acts on the victim, but did so without using force. It follows that the trial court acted properly by omitting any instruction on the crime of a nonforcible lewd act.

III

*ROMERO* MOTION

Defendant contends that the trial court erred by denying his *Romero* motion.

A.      *Additional Factual and Procedural Background.*

At the time of sentencing, defendant was 45.  He had the following prior convictions:

May 1989:  Being under the influence of a controlled substance, a misdemeanor. (Health & Saf. Code, § 11550.)  He was placed on probation for five years, on conditions including three months in jail.

July 1989:  Second degree robbery, a felony.  (Pen. Code, § 211.)[3]  He was placed on probation for three years, on conditions including a year in jail.  In 1990, his probation was revoked and he was sentenced to three years in prison.  In July 1991, he was released on parole.

August 1991:  Possession of methamphetamine for sale, a felony.  (Health & Saf. Code, § 11378.)  This violated his parole on the July 1989 offense.  He was sentenced to two years in prison.  In July 1992, he was released on parole; he successfully completed parole.

---

[3]      This was the strike prior.

January 1995:  Possession of a controlled substance, a felony (Health & Saf. Code, § 11377, subd. (a)), and sale or transportation of a controlled substance, a felony (Health & Saf. Code, § 11379, subd. (a)).  He was sentenced to six years four months in prison.

February 1995:  Sale or transportation of a controlled substance, a felony.  (Health & Saf. Code, § 11379, subd. (a).)  He was sentenced to six years in prison.  In August 1999, he was released on parole.  In November 2001, he was found to have violated his parole and was reimprisoned.  In February 2002, he was released on parole again.  On paper, at least, he successfully completed parole on December 11, 2002.  However, as one of the current offenses was committed sometime in 2002, it appears that he committed it while on parole, or at best, within days after completing parole.

Defendant attributed his criminal history to drug use.  He described his robbery conviction as the result of "a drug deal gone bad" — "instead of properly paying for the drugs, he just took the drugs."  He claimed he had not used drugs since 2002.

Defense counsel filed a written *Romero* motion.  In it, he argued that (1) defendant had a "[m]inimal" criminal history, and (2) the court should consider defendant's "background, character and future prospects" (which were not further specified).

After hearing argument, the trial court denied the motion.

B.    *Analysis*.

In *Romero*, the Supreme Court held that a trial court has discretion to dismiss a three-strikes prior felony conviction allegation under Penal Code section 1385.  (*People v. Superior Court (Romero)*, *supra*, 13 Cal.4th at pp. 529-530.)  The focus of the analysis must be on "'whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies.'  [Citation.]"  (*People v. Carmony* (2004) 33 Cal.4th 367, 377.)

"Because the circumstances must be 'extraordinary . . . by which a career criminal can be deemed to fall outside the spirit of the very scheme within which he squarely falls once he commits a strike as part of a long and continuous criminal record, the continuation of which the law was meant to attack' [citation], the circumstances where no reasonable people could disagree that the criminal falls outside the spirit of the three strikes scheme must be even more extraordinary."  (*People v. Carmony*, *supra*, 33 Cal.4th at p. 378.)

"[A] trial court's refusal or failure to dismiss or strike a prior conviction allegation under section 1385 is subject to review for abuse of discretion."  (*People v. Carmony*, *supra*, 33 Cal.4th at p. 375.)  "This standard is deferential.  [Citations.] . . .  [I]t asks in substance whether the ruling in question 'falls outside the bounds of reason' under the

applicable law and the relevant facts [citations]." (*People v. Williams* (1998) 17 Cal.4th 148, 162.)

We are at a loss to perceive any extraordinary circumstances here. Defendant is precisely the kind of garden-variety recidivist that the three strikes law was designed for. His multiple convictions and his multiple failures on probation and parole amply support the trial court's ruling.

Defendant argues that the strike prior was remote. Its remoteness, however, "is not significant" because defendant "did not refrain from criminal activity during that span of time, and he did not add maturity to age." (*People v. Williams*, *supra*, 17 Cal.4th at p. 163.)

Defendant also argues that his prior convictions were due to drug addiction; he claims he had been drug-free since 2002, implying that he would not recidivate further. His current convictions, however, belied this argument. One was committed in 2002 and the other in 2007. There is no indication that drug use played any part in them. Thus, the trial court could reasonably conclude that, even when defendant was drug-free, he still posed a risk of recidivism.

Finally, defendant argues that the trial court did not adequately consider his background — in particular, the fact that he was the primary caregiver for his disabled mother, and that "he was gainfully employed for many years before his arrest." However, defendant cannot show that the trial court did, in fact, fail to consider these factors. "[W]here a statement of reasons is not required and the record is silent, a

13

reviewing court will presume the trial court had a proper basis for a particular finding or order.  [Citation.]"  (*People v. Stowell* (2003) 31 Cal.4th 1107, 1114-1115.)

We therefore conclude that the trial court did not abuse its discretion by denying defendant's *Romero* motion.

IV

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RICHLI _____
J.

We concur:

RAMIREZ _____
P. J.

CODRINGTON _____
J.

14