Filed 7/24/14  P. v. Torres CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E056781 |
| v. | (Super.Ct.No. RIF10005869) |
| WILLIAM ESTUARDO RAMIREZ TORRES, | O P I N I O N |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Eric G. Helgesen, Judge. (Retired judge of the former Tulare Mun. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Diane E. Berley, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, and A. Natasha Cortina, Deputy Attorney General, for Plaintiff and Respondent.

A jury convicted defendant William Estuardo Ramirez Torres of 30 counts of lewd and lascivious acts upon a child under 14 by use of force or duress (Pen. Code, § 288, subd. (b)(1); counts 1-30),[1] one count of the rape of a child (§ 269, subd. (a)(1); count 31), and one count of the attempted rape of a child (§§ 664, 261, subd. (a); count 32). The trial court imposed an indeterminate term of 15 years to life, plus a determinate sentence of 183 years.

On appeal, defendant contends there is insufficient evidence of force or duress to support his convictions for violations of section 288, subdivision (b)(1) in counts 1 through 30. For the reasons stated below, the judgment will be affirmed.

## I.  Factual Background

Jane Doe, born in February 1991, was five years old when her mother married defendant. Defendant lived with Doe in Orange County and became the father figure in her life. Doe's mother trusted defendant to be alone with Doe and her other children. Defendant began molesting Doe in Orange County when she was seven or eight years old. Defendant continued to molest Doe for the next five years.

The first time defendant molested Doe she was in the third grade. Defendant picked Doe up from a friend's house the day after a slumber party in order to take her to see her mother and her newly born baby sister at the hospital. Defendant told Doe he needed to stop at their apartment before they went to the hospital. Defendant directed

---

[1] All further statutory references will be to the Penal Code unless otherwise noted.

Doe to come into the bathroom with him. Doe obeyed because she had been taught to respect adults.

Once in the bathroom, defendant sat down on the toilet, pulled his pants zipper down, and began playing with his penis. Defendant then reached into the shower and grabbed some conditioner, which he applied to his penis. Defendant told Doe to come closer. Though Doe was scared and in shock, she felt she had to obey defendant because he was her father figure and handled disciplinary matters in the family.

When Doe approached, defendant grabbed her hand and told her to play with his penis. Defendant told Doe to be a good girl and listen to him. Defendant held Doe's hand and moved it up and down on his penis. Then, defendant directed Doe to open her mouth while he placed his penis inside. Doe did not like it and tried to close her mouth, but defendant kept telling her to keep her mouth open. Defendant ejaculated, and told Doe to swallow the ejaculate. Doe did as she was told, though she felt like throwing up. Defendant told Doe she was a good girl and gave her some money. Defendant told her not to say anything to anyone because nobody would believe her. Later, defendant took Doe to visit her mother in the hospital. Doe did not tell her mother what had just happened because she was scared and did not think she would be believed.

Defendant molested Doe on more than 20 or 30 other occasions while the family lived in Orange County. One time, Doe was alone with defendant while he was driving to Lake Elsinore to help a relative move. Defendant pulled his penis out of his pants and

3

told Doe to play with it. Doe was scared, but felt that she had to do what defendant demanded. Defendant made Doe put his penis in her mouth while he ejaculated.

On multiple occasions, defendant came into Doe's bedroom late at night and touched her breasts with his hands and mouth. Eventually, defendant started to digitally penetrate Doe's vagina, though she was not sure whether this activity began in Orange County or Riverside. Doe was too scared to tell anybody about the molestations. She felt embarrassed, nasty, and dirty.

When Doe was in the sixth grade, her family moved to Riverside. Defendant continued to molest Doe after the move. Doe testified defendant molested her more than 20 times in Riverside.[2]

On one occasion while Doe was in the sixth grade, defendant took her into the master bedroom while Doe's mother was away. Defendant told Doe to take her pants off and lay on the bed. After she complied, defendant touched and kissed her breasts and body before inserting his fingers into her vagina. Defendant also put his mouth on Doe's vagina before he ejaculated on her stomach.

Doe tried to stop the molestations by telling defendant she planned to tell her mother what was happening. In response, defendant hit and slapped her. Doe repeatedly told defendant she hated him and wished he would die. Defendant would hit Doe's head, pull her ears, put his hand over her mouth, and tell her to shut up. On one occasion, a

_____

[2] Defendant also raped Doe at least one time in Riverside, and attempted to rape her on another occasion. Because defendant does not challenge these convictions, additional factual discussion of these crimes is not necessary here.

4

school counselor questioned Doe about some bruising on her face caused by defendant's blows. Doe lied about the source of her injury because she was afraid the police might come and take her sisters away from her home.

Doe's friend, Ariel S., sometimes spent the night at Doe's home in Riverside. Doe seemed really scared of defendant. On several occasions, Ariel observed defendant come into Doe's room in the middle of the night and call her out. Doe would leave with defendant for a while before returning and quickly getting back into her bed. The two girls began moving a large trunk in front of the bedroom door to prevent defendant from bothering Doe during the night. On one occasion, Ariel saw defendant grab Doe by her ear or shirt and treat her badly. When Ariel asked her friend why defendant was acting that way, Doe told Ariel that defendant was molesting her, but cautioned her not to tell anyone.

Doe told her mother that defendant had been molesting her when she was in the seventh or eighth grade. Her mother confronted defendant, and he eventually admitted that he had touched Doe inappropriately. Doe's mother told her daughter defendant was sorry for his actions. After that, the molestations stopped. Defendant and Doe's mother remained married.

When Doe was 19, she was home alone with defendant. While she was getting something to eat, defendant approached her in the kitchen. Doe felt like defendant might try to do something again. She left her plate of food in the kitchen and retreated to the bathroom. When she came out a few minutes later, defendant blocked her way. Doe felt

that defendant was making advances, so she turned and walked out the front door. Doe was very upset and called her sister in tears. Saying she could not take it anymore, Doe told her sister about defendant's molestations. Doe's sister called the police.

At trial, defendant admitted touching Doe's chest and buttocks on two occasions when she was 13 years old. Defendant denied all the other charges.

## II. Discussion

A. *Applicable Law*

We are limited in our review of a claim of insufficiency of the evidence. We assess the sufficiency of evidence by reviewing the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value, such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Johnson* (1980) 26 Cal.3d 557, 578; see also *Jackson v. Virginia* (1979) 443 U.S. 307, 319-320 [61 L.Ed.2d 560, 99 S.Ct. 2781].) "Given this court's limited role on appeal, defendant bears an enormous burden in claiming there is insufficient evidence to sustain his molestation convictions. If the verdict is supported by substantial evidence, we are bound to give due deference to the trier of fact and not retry the case ourselves." (*People v. Veale* (2008) 160 Cal.App.4th 40, 46 (*Veale*) [Fourth Dist., Div. Two], citing *People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.)

Section 288, subdivision (b)(1) prohibits the commission of lewd and lascivious acts upon a child under 14 by use of force, violence, duress, menace or fear of immediate

6

and unlawful bodily injury on the victim or another person.  Under section 288, subdivision (b)(1), duress means a direct or implied threat of force, violence, danger, hardship or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to (1) perform an act which otherwise would not have been performed or, (2) acquiesce in an act to which one otherwise would not have submitted.  (*People v. Leal* (2004) 33 Cal.4th 999, 1004; see also *Veale, supra*, 160 Cal.App.4th at p. 46, citing *People v. Cochran* (2002) 103 Cal.App.4th 8, 13.)  "[T]hreats need not be express, but may be inferred from conduct.  [Citation.]  Silent threats, of course, generate fear." (*People v. Reyes* (1984) 153 Cal.App.3d 803, 811.)

The legal definition of duress is objective in nature, and not dependent on the response exhibited by a particular victim.  (*People v. Soto* (2011) 51 Cal.4th 229, 246.)  Because duress is measured by an objective standard, a jury could find a defendant used threats or intimidation to commit a lewd act without resolving how the victim subjectively perceived or responded to the behavior.  (*Ibid.*)

Duress involves psychological coercion.  (*People v. Senior* (1992) 3 Cal.App.4th 765, 775; see also *People v. Cochran, supra*, 103 Cal.App.4th at p. 15.)  "Physical control can create 'duress' without constituting 'force.'" (*People v. Schulz* (1992) 2 Cal.App.4th 999, 1005.)  Where the defendant is a family member and the victim is young, the position of dominance and authority of the defendant and his continuous exploitation of the victim are relevant to the existence of duress. (*People v. Espinoza* (2002) 95 Cal.App.4th 1287, 1319-1320; see also *Veale*, *supra,* 160 Cal.App.4th at p. 46

7

[total circumstances, including age of victim and the victim's relationship to the defendant, are factors to be considered in appraising existence of duress].)

"A simple warning to a child not to report a molestation reasonably implies the child should not otherwise protest or resist the sexual imposition." (*People v. Senior, supra,* 3 Cal.App.4th at p. 775.) Another factor to be considered is the occurrence of the molestation "in an isolated room out of the presence of other adults . . . ." (*People v. Superior Court (Kneip)* (1990) 219 Cal.App.3d 235, 238; see also *People v. Cochran, supra*, 103 Cal.App.4th at pp. 15-16.)

""""Where the defendant is a family member and the victim is young, . . . the position of dominance and authority of the defendant and his continuous exploitation of the victim" [are] relevant to the existence of duress. [Citation.]' [Citation.]" (*Veale, supra*, 160 Cal.App.4th at p. 49, quoting *People v. Schulz, supra,* 2 Cal.App.4th at p. 1005; see also *People v. Pitmon* (1985) 170 Cal.App.3d 38, 51 [finding evidence sufficient to establish duress, even though the victim testified the defendant did not use force or threats, when the victim was "eight years old, an age at which adults are commonly viewed as authority figures. The disparity in physical size between an eight-year-old and an adult also contributes to a youngster's sense of [her] relative physical vulnerability."].) A rational trier of fact can find duress where there is an "inherent imbalance of power in an encounter between a child and an adult bent on sexual conduct." (*People v. Soto, supra*, 51 Cal.4th at pp. 245-246.)

8

B. *Sufficiency of Evidence of Duress*

Defendant contends there is insufficient evidence of either force or duress to support his convictions in counts 1 through 30. Because the prosecution relied primarily upon a theory of duress and we conclude ample evidence of duress was presented as to all of the challenged convictions, we need not decide whether sufficient evidence of force was also present here.[3]

The evidence at trial established that defendant repeatedly molested Doe beginning when she was only seven or eight years old. Children are physically and emotionally vulnerable at such young ages. (*People v. Pitmon, supra*, 170 Cal.App.3d at p. 51.) As in *People v. Cochran, supra,* 103 Cal.App.4th at pages 15 and 16, defendant's molestations took place in the family home when Doe's mother was not present. (See

---

[3] The record shows that the prosecution relied primarily upon a theory of duress in this case. However, we note Doe's testimony supports a conclusion that defendant used force to accomplish at least some of the molestations. In addition, defendant admitted to the use of force during the acts of molestation charged as counts 16 and 17. Defendant testified that he "grabbed" Doe from behind while he was alone with her in his bedroom. Defendant touched Doe's breast and buttocks, and attempted to touch her vagina, until Doe ran away. On a second occasion, defendant saw Doe walk by him in the hallway. Defendant "stopped" Doe with his hand and "grabbed" her, touching her breast with one hand and her buttocks with the other. The "force" requirement of section 288, subdivision (b)(1) will be deemed satisfied when the defendant uses any force that is "different from and in excess of the type of force which is used in accomplishing similar lewd acts with a victim's consent." (*People v. Neel* (1993) 19 Cal.App.4th 1784, 1790.) "According to the majority of courts, this includes acts of grabbing, holding and restraining that occur in conjunction with the lewd acts themselves." (*People v. Alvarez* (2009) 178 Cal.App.4th 999, 1005 [force element met where the defendant resisted the victim's attempts to push him away, holding the victim while he digitally penetrated her, before grabbing the victim's hands and placing them on his penis]; *People v. Babcock* (1993) 14 Cal.App.4th 383, 388 [force element met when the defendant grabbed the victim's hands and made them touch his genital area].)

also *People v. Superior Court (Kneip), supra*, 219 Cal.App.3d at p. 238.) Defendant was Doe's stepfather, and was responsible for taking care of her during the times he molested her. As in *People v. Espinoza, supra*, 95 Cal.App.4th at page 1320 and *Veale, supra*, 160 Cal.App.4th at page 47, defendant occupied a position of authority in the family, handled disciplinary matters and was a "father figure" to Doe. Defendant repeatedly admonished Doe to tell no one about the molestations (see *People v. Senior*, *supra,* 3 Cal.App.4th at p. 775), and gave her money when he first began molesting her. When Doe tried to stop the molestations by telling defendant she would inform her mother what was happening, defendant hit and slapped her. All of these circumstances would have reasonably contributed to Doe's sense of duress during defendant's molestations.

The present case is similar to *Veale*. In *Veale*, the victim was six or seven years old when the defendant, her stepfather, began molesting her. The victim was subjected to acts similar to those committed against Doe in the current case. The victim in *Veale* testified that she did not tell her mother about the molestations because she thought her mother would not believe her, and the victim was afraid something might happen to her mother if she disclosed the molestations, though the defendant in *Veale* had not made such threats to the victim. This court concluded there was sufficient evidence of duress to support convictions under section 288, subdivision (b)(1), because on at least one occasion the bedroom door was locked, the defendant was an authority figure in the household, and the victim was afraid to report the molestations. (*Veale, supra,* 160 Cal.App.4th at pp. 46-47.)

In the present case, as in *Veale*, the victim's young age and the disparity of physical size between Doe and defendant made her more susceptible to coercion due to defendant's position of authority in the family. Though no evidence was presented that defendant locked a bedroom door, he did take steps to isolate Doe from others, such as taking her into rooms in the home where no one else was present and calling her out of her bedroom when a friend was spending the night, thereby making her more vulnerable to defendant's unlawful acts. (See, e.g., *People v. Cochran, supra,* 103 Cal.App.4th at pp. 15-16; *People v. Superior Court (Kneip), supra*, 219 Cal.App.3d at p. 238.)

Substantial evidence thus supports the jury's implied finding of duress inherent in defendant's challenged convictions.

Defendant's reliance on *People v. Espinoza, supra*, 95 Cal.App.4th at page 1321 is misplaced. In *Espinoza,* the court concluded there was insufficient evidence of duress used to accomplish a series of molestations of the defendant's 12-year-old daughter during a one-month period, where the perpetrator never threatened the victim or said anything other than expressing love for his daughter during the molestations. (*Id*. at p. 1295.) Unlike Doe, the victim in *Espinoza* "made no oral or physical response to his acts." (*Id*. at p. 1320, fn. omitted.)

In contrast here, defendant's molestations took place over a period of five years, beginning when Doe was only seven or eight years old. Contrary to defendant's assertion that there was insufficient evidence of his threats to the victim, Doe testified that defendant physically assaulted her on multiple occasions, and repeatedly admonished her

11

not to tell anyone about the molestations because no one would believe her. Left unsaid was that disclosure of the molestations would disrupt Doe's mother's relationship with defendant and their household and family. Doe testified she believed the police might take her sisters away if she revealed defendant's molestations. We regard this as an implied threat of hardship that would result if Doe refused to acquiesce to defendant's sexual demands. We conclude defendant "took advantage not only of his psychological dominance as an adult authority figure, but also of his physical dominance to overcome [Doe's] resistance to molestation. This qualifies as duress." (*People v. Schulz, supra*, 2 Cal.App.4th at p. 1005.)

Based on the foregoing, substantial evidence exists to support defendant's convictions under section 288, subdivision (b)(1).

### III. Disposition

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:

RICHLI
J.

MILLER
J.

12