[No. H008268. Sixth Dist. Jan. 17, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
KENNETH LEE SCHULZ, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, sections 1, 2, 5C and 7 of this opinion are certified for publication.

**COUNSEL**

Alister McAlister for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Mark S. Howell and Christopher J. Wei, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

### ELIA, J.—

#### 1. Introduction

Defendant Kenneth Lee Schulz appeals from his conviction after court trial based on the preliminary hearing transcript of six counts of sexually molesting his niece, who was then under fourteen years of age. (Pen. Code, § 288.)[1] Five subdivision (a) counts (one through six, except four) involved lewdly or lasciviously touching her body with the intent of arousing, appealing to, or gratifying his or her lust, passion, or sexual desires. One subdivision (b) count (count four) involved such touching by use of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on said child or another person.[2] Defendant was sentenced to seven years' imprisonment, consisting of the three-year lower term on count one, three concurrent three-year terms on counts two, three, and five, and two consecutive two-year terms (one-third the midterm) on counts four and six.

On appeal defendant contends (1) the charges and the testimony were so vague as to deny him due process, (2) several charges were barred by the statute of limitations, (3) both an adverse factual finding by the magistrate and insufficient evidence prohibit his subdivision (b) conviction, and (4) he was prejudiced by the trial court's failure to advise him of the probability of conviction following his submission to court trial on the preliminary hearing transcript. For the reasons stated below, we will reverse the judgment and remand for resentencing, finding one count time barred and otherwise rejecting defendant's contentions.

#### 2. Preliminary hearing evidence

Defendant lived with his sister and her two daughters in their two-story San Jose apartment on and off between 1981 and 1987. He stayed with them

---

[1] Unspecified section references are to the Penal Code. Unspecified subdivision references are to section 288.

[2] Section 288 states the specific intent and the means in the alternative, although the amended information charged defendant in the conjunctive. Defendant makes no issue of this variance. (Cf. *People* v. *White* (1987) 188 Cal.App.3d 1128, 1137, fn. 7 [233 Cal.Rptr. 772].)

for up to three months at a time, sleeping on the downstairs couch. The victim, his sister's younger daughter,[3] was born on December 15, 1976, and was 13 years old when she described the following incidents at the preliminary hearing.

### A. Count one (between July 1, 1983, and June 30, 1984)[4]

During spring break of first grade in March or April 1984, defendant walked into the upstairs bathroom and asked if she needed help taking her bath. Defendant removed his clothes and got into the bathtub with her. He got on top of her and put his penis in her vagina.

### B. Count three (between Jan. 1 and Dec. 31, 1984)

Shortly before she received her first bicycle at Christmas 1984, she fell and skinned her knee when she was learning to ride a bicycle.[5] Defendant came out and kissed her knee. She was crying and he tried to make her laugh. He took her into her upstairs bedroom. He reached under her sunsuit and touched her all over including her breasts and genital area. He stopped touching her before her mother entered the room and asked what he was doing. He said he was trying to cheer her up because she had skinned her knee. She went downstairs and helped her mother make dinner. She did not tell her mother about defendant touching her because "I loved my uncle."[6]

### C. Count two (between Oct. 1, 1984, and June 30, 1985)

One day in the last part of 1984 going into 1985, he put his penis in her vagina. The following day her vagina began bleeding when she was at a playground near her apartment.[7] Her sister went to get defendant. Defendant asked her what happened and she said she just started bleeding. He told her

---

[3]We withhold her name to protect her privacy.

[4]The amended information only specifies a date range without describing any particular incident. Our alignment of testimony and the counts reflects our best guesses about the fact finder's conclusions.

[5]On cross-examination she acknowledged she might have skinned her knee a year before she got her first bicycle and it was possible she received the bicycle another year.

[6]She initially testified that he took her into the house and starting touching her. She ran into her room and he followed. After her mother spoke to him, he grabbed her, carried her downstairs, put her under the blankets, and rubbed her vagina. She was "six, seven" years old and in "second, third, first" grade. She first learned to ride a bicycle when she was eight. Eventually, she related the skinned knee incident to receiving her first bicycle at Christmas 1984. Defendant touched her vagina under the blankets a different time. "It's confusing because so many things happened to" her.

[7]On cross-examination, she acknowledged it was possible this bleeding occurred before she began school, which was in September 1982.

that she should say she hurt herself on the playground spinner. She talked to her mother on the telephone.[8]

### D. Count four (between Nov. 1, 1984, and June 30, 1986)

The day after the playground bleeding defendant woke her up at night in her bedroom. He grabbed her arm, trying to get her off her bed. She got up and ran to a corner of her room. He grabbed her and held her arm in the corner and she screamed and cried. On direct examination she testified he did not touch her breasts or vagina on this occasion. On cross-examination she testified he did touch her breasts and vaginal area when he got her in the corner. Her mother entered the room and hugged her. Defendant told his sister he was trying to calm her down after a nightmare. He kissed her good night and went back downstairs.

### E. Count five (between Nov. 1, 1984, and June 30, 1986)

When she was in second or third grade (between fall 1984 and spring 1986) on a Sunday when her mother and sister were in church, defendant asked her to touch his penis when he was sitting on the couch. He said that was what people did when they loved each other. He put her hand on his penis. He removed her clothes, made her lie on the couch, and put his penis in her vagina. When he took it out, "[h]e had white stuff coming out of it," which he asked her to lick off. She refused. At his request she brought a towel and wiped his stomach off.

### F. Count six (between Nov. 1, 1986, and June 30, 1987)

In early 1987 defendant lay down on the couch behind his niece when she was wearing brown "cords" and watching television. She was home from school with "pink eye." Defendant touched her breasts through her clothes and rubbed his arm up her thigh. She got up and screamed, "No" and went upstairs into the bathroom.[9] Defendant knocked on the bathroom door to say he was leaving. She opened the door and they went downstairs where he threw her in the air and caught her a few times before leaving.

---

[8]According to the victim's mother, the victim called her from school in April or May 1985. Her daughter thought her period had started since her vagina was bleeding.

[9]She initially testified that defendant sat down next to her on the couch around Christmas in 1986 when she was watching television. She was wearing a T-shirt and underwear. He touched her breasts and vaginal area through her clothing and then removed her clothing and continued touching her breasts and vaginal area. She corrected herself by saying it occurred later and she got up and left before he reached under her clothes. "He did it a lot when" she was on the couch.

### G. Other incidents

The victim described other incidents. When she returned from a field trip near the end of her 1982-1983 kindergarten year, defendant touched her breasts and genital area through her clothes. He unzipped her shorts and touched her stomach and genital area. She also described a camping trip during which defendant did not succeed in unzipping her pants in the camper because her sister walked in. There were other incidents but she could not remember the details.

3-5B.*

. . . . . . . . . . . . . . . . . . . . . . .

### C. Was there sufficient evidence of force or duress?

 Defendant contends there was insufficient evidence of force or duress. He does not specifically argue insufficient evidence of the other statutory alternatives, namely violence, menace, or fear of immediate and unlawful bodily injury.

Since neither defendant nor the People are certain which incident was the basis for count four, they argue about all of them. We focus on what defendant called a nightmare, when he awakened the victim by grabbing her arm, cornered her while she cried, held her arm, and touched her breasts and vaginal area.

 As this court recognized in *People* v. *Quinones* (1988) 202 Cal.App.3d 1154 [249 Cal.Rptr. 435], "force" means " 'physical force substantially different from or substantially in excess of that required for the lewd act.' " (*Id.* at p. 1158.) We do not regard as constituting "force" the evidence that defendant grabbed the victim's arm and held her while fondling her. (Contra, *People* v. *Pitmon* (1985) 170 Cal.App.3d 38, 48 [216 Cal.Rptr. 221]—physical manipulation of hand and pushing on back during lewd touching; *People* v. *Bergschneider* (1989) 211 Cal.App.3d 144, 154 [259 Cal.Rptr. 219]—pushing head against victim's hands during oral copulation; cf. *People* v. *Mendibles* (1988) 199 Cal.App.3d 1277, 1307 [245 Cal.Rptr. 553]—pulling head forward during lewd touching.) The "force" factor differentiates the charged sex crime from the ordinary sex crime. Since ordinary lewd touching often involves some additional physical contact, a modicum of holding and even restraining cannot be regarded as substantially different or excessive "force."

---

*See footnote, *ante,* page 999.

 Physical control can create "duress" without constituting "force." "Duress" would be redundant in the cited statutes if its meaning were no different than "force," "violence," "menace," or "fear of immediate and unlawful bodily injury." (Cf. *People* v. *Pitmon, supra,* 170 Cal.App.3d at p. 50.) "Duress" has been defined as "a direct or implied threat of force, violence, danger, hardship or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to (1) perform an act which otherwise would not have been performed or, (2) acquiesce in an act to which one otherwise would not have submitted." (*Ibid.*, fn. omitted.) As this court recognized in *People* v. *Superior Court (Kneip)* (1990) 219 Cal.App.3d 235 [268 Cal.Rptr. 1], duress involves psychological coercion. (*Id.* at p. 238.) Duress can arise from various circumstances, including the relationship between the defendant and the victim and their relative ages and sizes. (*People* v. *Pitmon, supra,* 170 Cal.App.3d at p. 51; *People* v. *Superior Court (Kneip), supra,* 219 Cal.App.3d at p. 239.) "Where the defendant is a family member and the victim is young, . . . the position of dominance and authority of the defendant and his continuous exploitation of the victim" is relevant to the existence of duress. (*People* v. *Superior Court (Kneip), supra,* 219 Cal.App.3d at p. 239.)

 In our view duress was involved in this "nightmare" incident. The victim, then nine years old, was crying while defendant, her adult uncle, restrained and fondled her. On this occasion he took advantage not only of his psychological dominance as an adult authority figure, but also of his physical dominance to overcome her resistance to molestation. This qualifies as duress. (*People* v. *Sanchez* (1989) 208 Cal.App.3d 721, 747-748 [256 Cal.Rptr. 446]; *People* v. *Bergschneider, supra,* 211 Cal.App.3d at p. 154.)

*6.\**

. . . . . . . . . . . . . . . . . . . . . .

*7. Disposition*

The judgment is reversed as to count one and remanded for resentencing.

Agliano, P. J., and Bamattre-Manoukian, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 25, 1992.

---

*See footnote, *ante,* page 999.