Filed 4/4/14  P. v. Reyes CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G048588 |
| v. | (Super. Ct. No. 11WF0180) |
| ARELI REYES, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, John D. Conley, Judge.  Affirmed.

Siri Shetty, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Melissa Mandel and A. Natasha Cortina, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

A jury convicted defendant Areli Reyes of oral copulation with a child 10 years or younger (Pen. Code, § 288.7, subd. (b); count 1; all further statutory references are to this code), attempted oral copulation with a child 10 years or younger (§ 288.7, subd. (b), § 664; count 4), two counts of aggravated lewd acts on a child under age 14 (§ 288, subd. (b)(1); counts 2 and 5), and five counts of lewd conduct on a child under 14 (§ 288, subd. (a); counts 3 and 6 through 9). The jury also found true multiple victims and substantial sexual conduct allegations in connection with counts 2, 3, 5, and 6 through 9. The trial court sentenced defendant to 45 years to life.

In his appeal, defendant contends there is insufficient evidence to sustain his conviction on counts 2 and 5, in that there was insufficient evidence that the lewd acts were compelled by force or duress. We find sufficient evidence to sustain the conviction on these counts. Defendant also urges reversal based on the admission of statements made by him during what he contends was coercive interrogation. We disagree with this contention as well. Finally, he argues his sentence must be vacated because the trial court failed to exercise its discretion in not imposing a concurrent term on count 9. The court properly exercised it discretion as the offenses occurred at separate times and involved separate locations. We therefore affirm the judgment.

FACTS

The two victims, E.T. and Amber T. were respectively born in 1999 and 2003. After defendant lived with them for a period, they, their mother, and their siblings moved in with defendant in 2010. All six slept in the same room. Defendant touched E. inappropriately and kissed her, with his tongue in her mouth, "a lot of times." E. related that at the first apartment, defendant had rubbed her breasts and vagina over her clothes and twice he touched her breasts under her clothes. In one incident, he opened the top of her shirt and put his lips on her chest.

2

E. testified that, after they moved, defendant rubbed her vagina under her clothes three times, and her buttocks once also under her clothes. In another instance, defendant sat next to E. on her bed, exposed his penis and told her to touch it and to put it to her mouth. His penis touched her lips. He then told her he was going to put his penis into her buttocks; although E. felt defendant's penis against her buttocks, she was able to get away. The last incident was witnessed by E.'s mother, who asked him what he was doing. Defendant explained he was only "'showing his dick'" (capitalization omitted) to E. and explained that it was her fault. E.'s mother immediately evicted defendant from the apartment, and thereafter arranged for another family member to report defendant's conduct to the police.

Defendant fled to Mexico but eventually returned to Orange County where he was apprehended. When being interviewed by the police, he admitted E. touched his penis with her hand and her mouth but denied forcing her to do so. He also admitted touching E.'s vagina over her clothes and to kissing her. But he blamed E. as the one who induced him to engage in this sexual conduct.

E.'s sister, Amber, was six years old when defendant summoned her and kissed her on her mouth with his tongue. She ran away and later told her mother.

DISCUSSION

*1. Substantial evidence supports the finding the lewd acts were compelled by force or duress.*

Defendant argues the conviction on counts 2 and 5 should be reversed, because "the record [fails to disclose] any evidence that the molestation involved substantially greater force than necessary to accomplish those acts." We test this contention under the substantial evidence rule and affirm if "'"'"viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the

3

essential elements of the crime beyond a reasonable doubt.'"'"' (*People v. Robertson* (2012) 208 Cal.App.4th 965, 983.)

Counts 2 and 5 were based on defendant's lewd acts on E. when he exposed his penis and told her to touch it and to put it to her mouth. He then told her he was going to put his penis into her buttocks and E. felt defendant's penis against her buttocks. Defendant grabbed E.'s hand and pulled it to his penis. E. reported that in connection with these incidents "he did grab me, and he grabbed me a little bit strongly;" defendant pulled her to make her touch his penis with her mouth. Later in describing the incident, she stated, "he pulled me, me this way strongly like this." She also testified defendant pulled her hand to place it on his penis.

Defendant cites *People v. Senior* (1992) 3 Cal.App.4th 765 (*Senior*) and *People v. Schulz* (1992) 2 Cal.App.4th 999 (*Schulz*) for the proposition that "[s]ince ordinary oral copulation . . . almost always involve[s] some physical contact other than genital, a modicum of holding and even restraining cannot be regarded a substantially different or excessive 'force.'" (*Senior, supra,* 3 Cal.App.4th at p. 774.) Likewise, *Schulz* stated that the fact the defendant held the victim's arm, and touched her breasts and vaginal area did not constitute the necessary force to support. (*Schulz, supra,* 2 Cal.App.4th at p. 1004.)

In the first instance, we note the statements in both *Senior* and *Schulz* were dicta. Those cases held that even if the force used was insufficient, there was sufficient evidence of duress to support the convictions in each case. (*Senior, supra,* 3 Cal.App.4th at p. 775; *Schulz, supra,* 2 Cal.App.4th at p. 1005.) Furthermore, as both sides recognize, more recent cases have rejected the *Senior/Schulz* dicta, concluding the force required under Section 288, subdivision (b)(1) "includes acts of grabbing, holding and restraining that occur in conjunction with the lewd acts themselves." (*People v. Alvarez* (2009) 178 Cal.App.4th 999, 1005.) The Attorney General cites half a dozen cases to the same effect.

4

We also note *Shultz* recognized that, "'Where the defendant is a family member and the victim is young, . . . the position of dominance and authority of the defendant and his continuous exploitation of the victim' is relevant to the existence of duress." (*Schulz, supra,* 2 Cal.App.4th at p. 1005.) These factors were present here and support the finding of duress; although defendant and E.'s mother were not legally married, defendant was a *de facto* family member and E.'s surrogate father. Further evidence of duress was defendant's warning that E. not tell her mother; E. testified she acted accordingly as she was afraid to tell her mother because she feared defendant would do something to her mother.

We conclude there was sufficient evidence to support defendant's conviction on counts 2 and 5 on either a force or duress theory.


*2. Defendant's statements were not obtained by a coercive custodial interrogation.*

The trial court conducted a pretrial hearing on defendant's motion to suppress his statements to the police. After hearing testimony from Officer Myrna Caballero, who took the recorded statement, and reading the recorded statement, the court denied the motion. Defendant contends this was error because he claims the statements were made while he was in custody and before he had been advised of his rights under *Miranda v. Arizona* (1966) 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694] (*Miranda*). He also contends the interrogation was coercive.

When Officer Caballero and an assistant, Vianey Castro, arrived at defendant's residence, they found two uniformed police officers investigating an unrelated traffic accident. Defendant invited Caballero and Castro to accompany him to his bedroom for an interview. One of the uniformed police officers followed them but stayed out of the bedroom. Caballero was dressed in jeans, a T-shirt, and an over-shirt and carried a sidearm concealed under her over-shirt. Castro was in regular civilian clothes and not armed.

5

Caballero and defendant seated themselves, facing each other, on a twin bed; Castro was seated in a chair in the same room. Caballero initially told defendant he was not under arrest. Defendant first stated he did not understand why Caballero was there. Caballero said they had spoken with E. and had evidence that something happened with her. Defendant claimed it was E.'s idea because she had been looking at him "not like her dad." He denied using force with E. and said she removed his shorts and that her mouth touched his penis for only two seconds. He acknowledged touching E.'s vagina "on top of her underwear, not inside." After Caballero advised defendant of his *Miranda* rights, he acknowledged everything he had previously said was true and reiterated some of his earlier statements.

Defendant claims the court erred in admitting his statements because of the officers failure to immediately advise him of his *Miranda* rights and because the interview was coercive. The requirement a suspect must be advised of his or her rights under *Miranda* applies when the person is in custody. (*Miranda, supra*, 384 U.S. at p. 444.) A suspect is in custody when a reasonable person in the suspect's position would feel that his "freedom of action is curtailed to a 'degree associated with formal arrest.'" (*Berkemer v. McCarty* (1984) 468 U.S. 420, 440 [104 S.Ct. 3138, 82 L.Ed.2d 317].)

We agree with the trial court that defendant failed to show that his statements were made while he was in custody. Defendant invited Caballero and Castro into the bedroom and they placed no restrictions on his movements. Caballero and Castro were in civilian clothing and Caballero's weapon was not visible. At the outset, she told defendant he was not under arrest. Defendant emphasizes the presence of the police officer but the officer happened to be there on an unrelated matter and did not enter the room during the interview. Reading the transcript of the interview does not disclose any particular pressure being placed on defendant; the fact that, in a few instances, the parties spoke over each other does not make the interview coercive, nor

6

does the fact Caballero falsely represented to defendant she had evidence obtained from E.

Defendant notes that, in determining whether a suspect would feel free to leave (*People v. Leonard* (2007) 40 Cal.4th 1370, 1400), the court should consider: "'(1) the site of the interrogation[;] (2) whether the investigation focused on the subject[;] (3) whether the objective indicia of arrest are present[;] and (4) the length and form of questioning.'" (*People v. Spears* (1991) 228 Cal.App.3d 1, 23.) Considering these factors, we cannot disagree with the trial court's conclusion this was not a custodial interrogation.

*3. The court did not err in sentencing defendant.*

Defendant contends the trial court mistakenly believed consecutive sentencing on count 9 was mandatory under the "One Strike" law. Both sides agree that, under section 667.61, whether to sentence concurrently or consecutively on this count was within the court's discretion. The issue thus is: did the court announce the sentence under a mistaken belief it lacked such discretion.

Before sentencing, each side supplied the court with a sentencing brief. Both briefs clearly stated that whether sentencing on count 9 was to be imposed consecutively or concurrently was within the discretion of the court. The court reviewed these briefs before sentencing. It therefore seems clear the court was aware of its discretion.

Furthermore, after the court announced a tentative sentence which specified a consecutive sentence on count 9, the prosecutor asked "[o]n count 9, is the court going to make findings as to count 9 as to why the court is running it consecutively? . . . [¶] . . . I just wanted to make sure that if the court – and I am asking because it is a separate victim, separate time . . . . But I think to be safe, the court needs to make findings or at least state on the record why it is imposing a consecutive sentence as to a separate

7

victim." The court responded, "Well, the court will make the findings under *Rodriguez* [*People v. Rodriguez* (2005) 130 Cal.App.4th 1257] which is cited in the tentative sentence that [it] was a separate victim at a separate time. Once the court makes that finding, though, it[]s mandatory consec (*sic*) under the [O]ne [S]trike law, is it not? After a further statement by the prosecutor reiterating the need for the court to make additional findings, the court stated, analogizing to section 654, dealing with double sentencing, "I don't see why if the court has discretion, the court would [not] exercise it by imposing the sentence. Separate victim, separate time. Separate damage to a separate person."

We can draw two conclusions from this somewhat ambiguous exchange. First, the court's expressed familiarity with *Rodriguez,* which clearly holds the court has discretion under section 667.61 to sentence concurrently and that it is error for the court to fail to recognize such discretion, indicates the court did understand it had discretion. (*People v. Rodriguez, supra,* 130 Cal.App.4th at p. 1262.) Secondly, the court's latter statement indicates it intended for the sentences to be served consecutively. Therefore, there was no error and, even if we were to assume the court misunderstood its discretion, such an error would be harmless because the court made it clear it would have sentenced consecutively in any event.

Finally, defendant contends the court erred in making dual use of factors to impose the consecutive sentences. We agree with the Attorney General that, although the fact that more than one victim was involved triggered the One Strike law, the decision to impose consecutive sentences was not only based on the fact there was more than one victim. The court also based its decision that the crimes were committed at separate times.

8

DISPOSITION

The judgment is affirmed.

RYLAARSDAM, ACTING P. J.

WE CONCUR:

BEDSWORTH, J.

FYBEL, J.