Filed 11/7/19

# CERTIFIED FOR PUBLICATION

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>　　v.<br><br>MOISES ALBERTO AGUILAR,<br><br>　　Defendant and Appellant. | B291637<br><br>(Los Angeles County<br>Super. Ct. No. KA115989) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Steven Blades, Judge.  Affirmed.

Melanie K. Dorian and Alex Coolman, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General of California, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Paul M. Roadarmel, Jr., Supervising Deputy Attorney General, Stephanie A. Miyoshi, Deputy Attorney General, for Plaintiff and Respondent.

_____

A jury convicted Moises Aguilar of forcible sexual penetration and sexual battery. Aguilar appeals only the former conviction, arguing there was no evidence of force and the trial court erroneously instructed the jury. We affirm. Code references are to the Penal Code.

## I

These are the facts.

A.R.'s father dated and lived with Aguilar's mother for about five years. A.R. met Aguilar when she was 10 years old. At one point, A.R. lived in the same house as her father, Aguilar's mother, and Aguilar. A.R. and Aguilar watched TV and played games together.

Aguilar started touching A.R. inappropriately when she was 13 or 14. Aguilar was 17. He grabbed A.R.'s chest and bottom several times a month. This grabbing made A.R. uncomfortable.

Early one morning, A.R. and Aguilar were watching TV. A.R. was on a couch. Aguilar sat about a foot away. A.R. was getting ready to sleep when Aguilar grabbed her chest. A.R. told Aguilar no but he did not stop. He put his hand under A.R.'s pants and underwear, rubbed her vagina, and put his fingers inside. This hurt A.R. A.R. continued to say no but he would not stop. A.R. resisted by grabbing and pulling his arm "the whole time." She could not pull his hand away because "he was too strong." A.R. was panicked and scared.

Aguilar grabbed A.R.'s arm and pulled it towards his penis. A.R. was able to pull her arm away.

Aguilar moved his fingers in and out of A.R.'s vagina for a long time. He stopped only when his mother approached. He disengaged before his mother saw anything.

A.R.'s 24-year-old sister M.R. also lived there. M.R. returned from work late one night. Five or six people were on the couch watching TV. M.R. squeezed on the couch, which was also her bed, and tried to sleep. She lay on her stomach with her hands over her head. A blanket covered her. Aguilar sat on the couch near M.R.'s head.

Minutes later, M.R. felt a hand touch the side of her breast under the blanket. She shoved her arm down to push the hand away, signaling "your hand doesn't belong there." The hand pushed her arm away and touched her breast again. M.R. turned and saw it was Aguilar. M.R. grabbed his hand to push him off, but he was stronger and started rubbing her breast. Aguilar put his hand under M.R.'s bra. M.R. started to cry. She was sad and afraid. She got up and walked out of the room.

M.R. told A.R. what Aguilar did. A.R. said Aguilar had done the same to her. A.R. and M.R. told their mother. They notified police.

A.R. made a pretextual call to Aguilar and told him she heard what he did to M.R. Aguilar said, "I hate myself." A.R. reminded Aguilar he first "did it" to her, and Aguilar replied, "I know . . . I hated the feeling so much . . . I hate it so bad." He also said, "I'm sorry what happened" and "I didn't think what . . . you would start to feel." Aguilar asked A.R. to forgive him. He said he was "done with that" and didn't "want any of this to come back because I know all the consequences it could do and, like, it's just, it's just not the right way to go." He promised he would not do the same to others.

Aguilar told a detective he touched A.R.'s bottom and breasts. A.R. "would say no" but Aguilar persisted because he "was just being dumb" and "not thinking." Aguilar also admitted

3

repeatedly grabbing M.R.'s breast even though she kept pushing his hand away. Aguilar said he put his finger in A.R.'s vagina. A.R. told him no and tried to push his hand away. A.R. used "a little bit of force, but like—she wouldn't like, like, push me off or anything." Aguilar said the same at trial.

The jury found Aguilar guilty of one count of forcible sexual penetration with a foreign object on a minor at least 14 years old (§ 289, subd. (a)(1)(C)) and one count of sexual battery (§ 243.4, subd. (e)(1)). The trial court sentenced Aguilar to six years.

## II

Substantial evidence supports Aguilar's conviction for forcible sexual penetration.

We review the evidence in the light favorable to the prevailing party to determine whether a rational jury could have found the crime's essential elements beyond a reasonable doubt. (*People v. Virgil* (2011) 51 Cal.4th 1210, 1263.) We accept all evidence supporting the judgment, disregard contrary evidence, and draw reasonable inferences in favor of the verdict. (*Harley-Davidson, Inc. v. Franchise Tax Bd.* (2015) 237 Cal.App.4th 193, 213–214.) The defendant bears an enormous burden. (*People v. Thomas* (2017) 15 Cal.App.5th 1063, 1071 (*Thomas*).)

Aguilar mistakenly argues there was no evidence of force beyond that inherent in the penetration.

Forcible sexual penetration occurs when a person commits the act "against the victim's will by means of force." (§ 289, subd. (a)(1)(C).) "Force" includes circumstances where the victim did not want to engage in the act and did not positively cooperate with it. Force includes efforts to move and to position the victim's body. (*Thomas, supra*, 15 Cal.App.5th at p. 1071.)

4

This record shows force. Aguilar persisted while A.R. repeatedly said no. A.R. did not cooperate. She tried to push him away. She was frightened and in pain. She struggled, but Aguilar overpowered her.

This is not a close case.

Aguilar relies on *People v. Schulz* (1992) 2 Cal.App.4th 999 (*Schulz*), but there is a chorus of disapproval for this opinion. (E.g., *People v. Alvarez* (2009) 178 Cal.App.4th 999, 1002.) The victim in *Schulz* was nine. The defendant was an adult. (*Schulz*, *supra*, 2 Cal.App.4th at p. 1005.) The *Schulz* decision impeaches itself by stating that a modicum of holding and even restraining cannot be regarded as force. (*Id.* at p. 1004.) But an adult does use force when he physically restrains a nine-year-old child by grabbing her arm, by cornering her while she cries, and by holding her arm so he can touch her breasts and vaginal area. (See *ibid.*) The adult is literally forcing himself upon the child. *Schulz*'s contrary conclusion is mystifying.

The same comments go for Aguilar's reliance on *People v. Senior* (1992) 3 Cal.App.4th 765 (*Senior*). The victim in *Senior* was the defendant's 13-year-old daughter. (*Id.* at p. 770.) *Senior* followed *Schulz* and is just as baffling. The *Senior* opinion, for instance, contains this troubling sentence: "We also do not regard as constituting 'force' the evidence that defendant pulled [his 13-year-old daughter] back when she tried to pull away from the oral copulations in August." (*Id.* at p. 774.) Immediately following this sentence is a string of contra cites. We are with the contra cites, because an adult pulling his unwilling 13-year-old daughter back to oral copulation is using force.

5

We reject *Schulz* and *Senior*. To demand more resistance from a small victim is to misunderstand how more resistance invites more injury.

Aguilar's other arguments are wide of the target. Illogically, he claims he could not "apply force using the same hand that was committing the act of sexual penetration . . . ." He also argues there was "no evidence [he] was flexing his arm." This is irrelevant. Aguilar claims there was no evidence he "intended to use force . . . ." This misunderstands force.

### III

The trial court had no sua sponte duty to give a nonforcible sexual penetration instruction. We independently review a trial court's failure to instruct on a lesser included offense and view the evidence in the light favorable to the defendant. (*People v. Millbrook* (2014) 222 Cal.App.4th 1122, 1137.) A trial court must instruct on lesser included offenses when the evidence raises a question as to whether all the elements of the charged offense were present. The court need not do so when there is no evidence the offense was less than charged. (*People v. Breverman* (1998) 19 Cal.4th 142, 154.) There is no evidence Aguilar committed anything less than forcible sexual penetration. Thus the trial court was not obligated to instruct on nonforcible sexual penetration.

### DISPOSITION

The judgment is affirmed.

WILEY, J.

We concur:

BIGELOW, P. J.          GRIMES, J.

6