Filed 6/30/23  P. v. Ochoa CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>JOSE OCHOA,<br><br>        Defendant and Appellant. | D080014<br><br>(Super. Ct. No. RIF1405879 )<br><br>ORDER MODIFYING OPINION<br><br>NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed on June 20, 2023, be modified as follows:

1.     At the top of page 3, line 2, the reference to section "288" is corrected to read as section "287."

2.     On page 22, the first full paragraph under the Disposition heading, line 6, the reference to section "288" is corrected to read as section "287."

There is no change in the judgment.

McCONNELL, P. J.

Copies to:  All parties

Filed 6/20/23  P. v. Ochoa CA4/1 (unmodified opinion)
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JOSE OCHOA,<br><br>    Defendant and Appellant. | D080014<br><br><br>(Super. Ct. No. RIF1405879 ) |

APPEAL from a judgment of the Superior Court of Riverside County, Bernard J. Schwartz, Judge.  Reversed in part; affirmed in part; remanded with directions.

Jason L. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, A. Natasha Cortina and Stephanie A. Mitchell, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Jose Ochoa of aggravated sexual assault of a child by forcible sodomy (Pen. Code,[1] § 269, subd. (a)(3); count 1); aggravated sexual assault of a child by forcible oral copulation (§ 269, subd. (a)(4); count 2); 11 counts of forcible lewd conduct on child under 14 years of age (§ 288, subd. (b)(1); counts 3-10, 12-14); and nonforcible lewd conduct on a child under 14 years of age (§ 288, subd. (a); count 11). The jury also found true that Ochoa, in the commission of the offenses charged, committed an offense against more than one victim within the meaning of section 667.61, subdivision (e)(4).

The court sentenced Ochoa to prison for a total term of 210 years to life.

Ochoa appeals, contending counts 1 through 10 must be reversed because there was insufficient evidence that he sexually assaulted and committed lewd acts upon the victim by means of force or duress. In addition, he asserts counts 1 and 2 must be reversed because the trial court prejudicially erred by failing to sua sponte instruct the jury on nonforcible sodomy and nonforcible oral copulation as lesser included offenses. We agree with Ochoa that the court prejudicially erred in failing to provide the lesser included offense jury instructions regarding counts 1 and 2. Thus, we reverse Ochoa's convictions on those two counts. However, because we find that substantial evidence supports Ochoa's convictions for counts 1 through 10, we remand the matter back to the superior court to allow the prosecution the opportunity to retry Ochoa on those two counts. In the alternative, we conclude the evidence overwhelmingly establishes that Ochoa committed nonforcible sodomy of a minor under 14 years old and nonforcible oral copulation of a child under 14 years old; thus, if the prosecution elects not to retry Ochoa as to counts 1 and 2, the superior court shall proceed as if the

---

[1]     Statutory references are to the Penal Code unless otherwise specified.

2

remittitur constituted a modification of judgment to reflect convictions under sections 286, subdivision (c)(1) (count 1) and 288, subdivision (c)(1) (count 2). In all other respects, we affirm the judgment.

## FACTUAL BACKGROUND[2]

In 2000, Ochoa and Doe's mother were in a relationship and living with Ochoa's brother, his wife (Doe's maternal aunt), and their son and daughter.[3] Doe lived with his grandparents during the week but stayed with his mother and Ochoa on the weekends. When Doe was five years old, Ochoa started to come into his bedroom when he was asleep and molest him. Ochoa was 32 years old at the time, and there was a "considerable" difference in size between them.

When the incidents occurred, Doe's mother would be at work or asleep in her bedroom. Doe's mother had a drinking problem, and she and Ochoa would "drink all night." When he was drunk, Ochoa would go into Doe's bedroom and fondle Doe's buttocks under his underwear. He then would pull Doe's "shorts a little bit more down and, . . . , just be masturbating against [his] butt, . . . ." In the beginning, Doe told Ochoa to stop, but Ochoa would tell him "[j]ust a little bit more" or "[i]t's okay." Ochoa "just kind of downplayed it." Doe did not believe there was much he could do about the situation. After Ochoa started coming into his bedroom in the "middle of the night," he "just kind of accept[ed] it."

From the start, Ochoa told Doe not to tell anyone about what he was doing. Doe did not tell anyone, and "[i]t just kept on happening." At five

---

[2]     The jury convicted Ochoa of offenses committed against three victims. He only appeals the counts related to a single victim, John Doe. As such, we will only discuss the facts relevant to Ochoa's appeal.

[3]     The daughter later became another victim of Ochoa.

years old, Doe trusted Ochoa and followed his orders. Doe did not know his biological father, and Ochoa had been a father figure to him. If Ochoa asked him to do something, Doe would do it, "[n]o questions asked."

Ochoa's molestation of Doe escalated to Ochoa putting the tip of his penis in Doe's anus. Ochoa "never fully" put his penis "all the way [in]." Doe explained, "It's just masturbating, him coming on my ass, and then just putting the tip." Doe estimated that Ochoa put the tip of his penis in his "butt" 10 to 15 times and touched him with his hands the same number of times.

Sometimes when Doe's mother was at work, Ochoa would watch pornographic movies on television and masturbate. It became a "common occurrence" for Ochoa to show Doe pornographic movies. Doe would masturbate too, and then it would "escalate[ ] from there."

Ochoa and Doe's mother moved to a different house when Doe was in third or fourth grade. By that time, Ochoa and Doe's mother had two children together. While visiting Ochoa and his mother at that house, Ochoa molested Doe more than 15 times as the events were occurring "every weekend." The molestation was not limited as Doe explained: "It was molest, masturbating in my ass, putting the tip of his penis in my ass, and then I'd give him oral too." It "happened all together" at Ochoa's direction.

One time when Doe's mother was working late, Doe saw Ochoa in the living room watching pornography and masturbating. Ochoa told Doe to get "ice cream" from the refrigerator. Ochoa rubbed the ice cream on his penis and told Doe to "lick it off, that it will taste just the same." Doe put his mouth on Ochoa's penis and performed "oral."

Another time, Doe's mother and Ochoa bought Doe a remote-controlled car at a swap meet. Doe was very happy because typically he did not get

4

many gifts.  Later that day, Ochoa got into the shower with Doe and started "masturbating against [Doe's] ass."  Ochoa told him that if he "want[ed] another toy car, you just got to bend over."  Doe did what Ochoa told him, and Ochoa "[p]ut the tip of his penis in."

When Doe was in fifth or sixth grade, Ochoa and Doe's mother moved to a different house where Ochoa continued to molest him.  For the most part, Ochoa and Doe watched pornography and "masturbate[ed] with each other."  There were times when Ochoa would "touch [Doe's] butt or whatever," but putting the tip of his penis into his "butt" "actually calmed down a bit."

In 2008, Doe's mother passed away from "[d]rinking too much."  After that, Doe stopped visiting Ochoa, and the molestation ended.

As he got older, Doe thought a lot about what Ochoa had done to him and got angrier.  It also was "complicated" because he still wanted to see Ochoa.  When he was 18 years old, Doe told his girlfriend about the abuse and she encouraged him to tell his family.  Doe told his grandparents after he began to suspect that Ochoa had been doing something to his cousin, and he started to blame himself.  Doe had been embarrassed to tell anyone about the abuse when he was younger.  He also thought that if he "said something, [Ochoa] would have got in trouble" and he "wouldn't have had a dad."

DISCUSSION

I

SUBSTANTIAL EVIDENCE

A.  Ochoa's Contentions

Ochoa contends that the prosecution failed to present substantial evidence of force, duress, or fear to support the two aggravated sexual assault counts as well as the eight counts of forcible lewd conduct.  We disagree.

5

## B. Background

During closing argument, although the prosecutor briefly alluded to issues of fear and force, he focused on duress. In doing so, he urged the jury to "consider all the circumstances, including the age of the child and his relationship to the defendant." He emphasized the "considerable size difference" and "relationship dynamic." The prosecutor noted that Ochoa directed Doe to perform the sex acts, "taking advantage of [his] position of trust," and Ochoa ignored Doe's pleas for Ochoa to stop. He explained that Doe "knew how it was going to end because he tried stopping him. But he also looked up to Mr. Ochoa. He followed Mr. Ochoa's instructions. So he did what Mr. Ochoa wanted him to do."

The prosecutor discussed sodomy, oral copulation, and the lewd acts by force, arguing primarily that the "duress arguments are there." He pointed out that Ochoa told Doe not to tell anyone about the molestation.

During his closing argument, Ochoa's trial counsel argued, among other things, that "[t]here was no evidence that Mr. Ochoa threatened [Doe] in any way whatsoever." However, the focus of counsel's argument regarding Doe was that he made up the accusations against Ochoa to help his grandmother in a custody battle with Ochoa.

The prosecutor returned to the issue of duress during his rebuttal closing argument, pointing the jury to the evidence that supported the prosecution's theory of the case. For example, the prosecutor emphasized that Doe looked up to Ochoa and "would do anything that Mr. Ochoa wanted him to do." He maintained that Doe did not want to shower with Ochoa or be molested in bed by Ochoa but did so simply because of Ochoa.

Further, the prosecutor reminded the jury of the duress instruction: "Is it something that he would normally do? Is he normally going to lick ice

6

cream off of Mr. Ochoa's penis?  No.  It's a resounding no.  And you guys all know that."

### C. Analysis

When considering a challenge to the sufficiency of the evidence to support a criminal conviction, we "review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value— such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578 (*Johnson*); see *Jackson v. Virginia* (1979) 443 U.S. 307, 319-320.)  "In making this determination, we do not reweigh the evidence, resolve conflicts in the evidence, or reevaluate the credibility of witnesses." (*People v. Cortes* (1999) 71 Cal.App.4th 62, 71.)

As the prosecution focused on duress as to Doe, we evaluate only whether the prosecution presented substantial evidence of duress. " ' "Duress" has been defined as "a direct or implied threat of force, violence, danger, hardship or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to (1) perform an act which otherwise would not have been performed or, (2) acquiesce in an act to which one otherwise would not have submitted." . . .  [D]uress involves psychological coercion.  Duress can arise from various circumstances, including the relationship between the defendant and the victim and their relative ages and sizes . . . .  "Where the defendant is a family member and the victim is young, . . . the position of dominance and authority of the defendant and his continuous exploitation of the victim" [are] relevant to the existence of duress.' [Citation.]" (*People v. Espinoza* (2002) 95 Cal.App.4th 1287, 1319-1320 (*Espinoza*).)

7

"[T]he legal definition of duress is objective in nature and not dependent on the response exhibited by a particular victim." (*People v. Soto* (2011) 51 Cal.4th 229, 246.) Courts consider the totality of the circumstances in determining whether a defendant committed sexual abuse of a child by means of duress. (*People v. Thomas* (2017) 15 Cal.App.5th 1063, 1072 (*Thomas*).) "The totality of the circumstances include the victim's age, [his or] her relationship to the perpetrator, threats to harm the victim, physically controlling the victim when the victim attempts to resist, warnings to the victim that revealing the molestation would result in jeopardizing the family, and the relative physical vulnerability of the child." (*Ibid*; *People v. Senior* (1992) 3 Cal.App.4th 765, 775; *People v. Schulz* (1992) 2 Cal.App.4th 999, 1005 (*Schulz*).)

Ochoa argues that the instant matter is analogous to *Espinoza*. There, the appellate court found insufficient evidence of duress to support a count of lewd conduct by force or duress and a count of attempted rape. The defendant had repeatedly come into his daughter's bedroom at night while she was sleeping, pulled down her pants, and rubbed her breasts and vagina. (*Espinoza*, *supra*, 95 Cal.App.4th at p. 1293.) His daughter did not " 'do anything' " because she was scared and frightened, and she did not report these initial molests because she was afraid that the defendant would " 'do something.' " (*Ibid*.) After molesting her several times, defendant came into her bedroom one final time. This final time was the basis for the lewd conduct by force or duress and attempted rape counts. The defendant put his tongue in her mouth, licked her vagina, and tried to put his penis in her vagina. (*Ibid*.) Her only response was that she " 'moved' " and thereby prevented his penis from entering her. The defendant responded by apologizing and asking for her forgiveness. (*Ibid*.)

8

The trial court found duress based on the victim's "dependence on defendant, the size and age disparities, her limited intellectual level and her fear of defendant." (*Espinoza, supra,* 95 Cal.App.4th at p. 1319.) On appeal, the court distinguished its prior decision in *Schulz, supra,* 2 Cal.App.4th 999: "We agree with this court's conclusion in *Schulz* that, where the defendant grabbed and restrained the nine-year-old distraught victim, cornered her and used his physical dominance in conjunction with his psychological dominance to overcome her resistance, the lewd act was accomplished by duress. However, the evidence before us is substantially different. Defendant did not grab, restrain or corner [his daughter] during the final incident out of which the Penal Code section 288, subdivision (b) count and the attempted rape count arose. [His daughter] did not cry, and she offered no resistance. Instead, defendant simply lewdly touched and attempted intercourse with a victim who made no oral or physical response to his acts." (*Espinoza,* at p. 1320, fn. omitted.) The appellate court noted that "Duress cannot be established unless there is evidence that 'the victim['s] participation was impelled, at least partly, by an implied threat . . . .' " (*Id.* at p. 1321.)

Here, Ochoa argues that the prosecution's evidence did not support a finding of duress under *Espinoza* because "there was no evidence establishing duress by implied threats." He claims that there was no evidence that he made any direct or implied threats that Doe would suffer adverse consequences if he did not acquiesce to Ochoa's acts of sexual abuse. Ochoa's view of the evidence against him is too limited.

" 'We "must accept logical inferences that the [factfinder] might have drawn from the circumstantial evidence. [Citation.]" . . . Where the circumstances reasonably justify the trier of fact's findings, a reviewing court's conclusion the circumstances might also reasonably be reconciled with

9

a contrary finding does not warrant the judgment's reversal. [Citation.]' [Citation.]" (*People v. Manibusan* (2013) 58 Cal.4th 40, 87.)

Here, we conclude there was sufficient evidence from which the jury could infer that Ochoa committed sodomy, oral copulation, and lewd acts upon Doe by means of duress. Ochoa was a father figure in Doe's life and held a position of trust. When the molestation began, Doe lived with his grandparents during the week and with his mother and Ochoa on the weekends. Doe's mother was an alcoholic, and Ochoa was the only father Doe knew.

Additionally, there was a great disparity in both age and size between Ochoa and Doe. Ochoa was 27 years older (and physically larger) than Doe. As Doe testified at trial, if Ochoa asked him to do something, he would do it "[n]o questions asked." Because of Ochoa's position of authority and Doe's young age, Doe was "particularly susceptible to being coerced." (See *Thomas*, *supra*, 15 Cal.App.5th at p. 1073.)

Despite doing what Ochoa asked, Doe initially resisted Ochoa's molestation attempts. However, Ochoa overcame Doe's will by ignoring his protests and using his position of authority and trust. Doe testified that Ochoa would come into his bedroom while he was asleep and molest him. At first, Doe told Ochoa to stop; instead of stopping, Ochoa "downplayed" and minimized the abuse. Ochoa's suggestion, telling Doe "[j]ust a little bit more" or "[i]t's okay" while molesting him were not mere "reassuring words." Rather, Ochoa's statements provide further support for the inference that Doe was powerless to stop the abuse, and it did not matter to Ochoa that Doe was pleading for him to stop.

Additionally, duress was further established by Ochoa's instructions to Doe not to tell anyone. Doe did not tell, and the abuse "just kept on

10

happening." Doe had been a "kid" at the time and was embarrassed to tell anyone. He also was concerned that Ochoa would get in trouble if he told, and he did not want to lose his "dad." Against this background, a reasonable juror could conclude that Ochoa took advantage of his position and Doe's vulnerability to molest him every weekend for eight years, and each of the charged acts was committed by means of duress.

In addition, we are not persuaded by Ochoa's contentions that the shower and ice cream incidents did not involve any duress. During the shower incident, Ochoa told Doe to "bend over" if he ever wanted another toy car. Ochoa argues these words constituted bribery, which he claims is not duress. Yet, another reasonable interpretation of Ochoa's words is that if Doe wanted Ochoa to continue to be a father figure in his life and occasionally get him gifts, Doe better do what Ochoa asked even if he did not want to.

During the ice cream incident, Ochoa told Doe to bring him ice cream from the refrigerator. Ochoa then rubbed the ice cream on his penis and directed Doe to "lick it off." This event underscores how Doe followed Ochoa's directions even if Doe had to engage in sex acts that he was not willing to perform.

Moreover, based on the same evidence supporting duress discussed *ante* (Doe's young age, fear of defying Ochoa, and his consistent following of Ochoa's orders), the evidence supports the inference that Doe only engaged in sex acts with Ochoa in response to Ochoa's parental and physical authority. Such a conclusion is buttressed because Doe eventually did simply acquiesce to being molested but took a more active role, only at Ochoa's urging, in orally copulating Ochoa.

In short, on the record before us, we determine that substantial evidence supports the jury's finding of duress. We therefore reject Ochoa's

11

substantial evidence challenge to the aggravated sexual assault and forcible lewd conduct counts.

## II

## FAILURE TO INSTRUCT ON LESSER INCLUDED OFFENSES

### A. Ochoa's Contentions

Ochoa maintains his convictions under counts 1 and 2 must be reversed for the trial court's failure to sua sponte instruct the jury as to the lesser included offenses. As to count 1 (aggravated sexual assault by forcible sodomy) and count 2 (aggravated sexual assault by forcible oral copulation), Ochoa claims the jury should have been instructed as to the lesser included offense nonforcible sodomy of a minor and nonforcible oral copulation of a minor. The People counter that substantial evidence did not support the giving of a lesser included instruction for counts 1 and 2 (based on nonforcible acts with a minor), and even if such evidence existed, the error was harmless. Ochoa has the better argument.

### B. Background

Counts 1 and 2 both alleged aggravated sexual assault of a minor, one based on an act of forcible sodomy of Doe (§ 269, subd. (a)(3)) and the other based on an act of forcible oral copulation on Doe (§ 269, subd. (a)(4)). These two crimes are alleged to have occurred between December 14, 2000 and December 13, 2008. Ochoa also was charged with eight counts of forcible lewd touching of Doe with count 3 alleged to have occurred between December 14, 2000 through December 13, 2001; count 4 alleged to have occurred between December 14, 2001 and December 13, 2002; count 5 alleged to have occurred between December 14, 2002 and December 13, 2003; count 6 alleged to have occurred between December 14, 2003 and December 13, 2004; count 7 alleged to have occurred between December 14, 2004 and December

12

13, 2005; count 8 alleged to have occurred between December 14, 2005 and December 13, 2006; count 9 alleged to have occurred between December 14, 2006 and December 13, 2007; and count 10 alleged to have occurred between December 14, 2007 and December 13, 2008.

As to counts 1 and 2, the court instructed the jury with CALCRIM No. 1123 (Aggravated Sexual Assault of Child under 14), CALCRIM No. 1030 (Sodomy by Force, Fear, or Threats), CALCRIM No. 1015 (Oral Copulation by Force, Fear, or Threats), and CALCRIM No. 460 (Attempt Other Than Attempted Murder) (only as to count 1). Regarding counts 3 through 10, the court instructed the jury with CALCRIM No. 1111 (Lewd or Lascivious Act: By Force or Fear), CALCRIM No. 900 (Simple Assault), and CALCRIM No. 1110 (Lewd and Lascivious Act: Child Under 14 Years).

In discussing the jury instructions, the parties did not discuss the possibility of providing the jury with instructions regarding nonforcible sodomy and nonforcible oral copulation of a minor as lesser included offenses of aggravated sexual assault of a minor by forcible sodomy and forcible oral copulation. However before discussing the instructions, the court noted that there appeared to be "sufficient evidence as to Count 1 and 2 such that a reasonable jury could convict the defendant on those counts and that such

conviction would be sustained on appeal." The court then clarified that any section 1118.1 motion[4] as to counts 1 and 2 would be denied.

During the subsequent discussion of the jury instructions, the court asked defense counsel if he would like the lesser included instruction for lewd or lascivious conduct (without force or fear) for the charged offenses of lewd and lascivious conduct with force or fear. Defense counsel responded that he "thought it was sua sponte, but [he] would request it." The court assented, "All right. Well, I agree. It certainly should be given, especially given the state of the evidence. There could be an argument that the [section] 288 offense was not done with force or duress or any one of those other elements that would be necessary."

During jury deliberations, the jury indicated that it was having trouble reaching agreement on counts 1 and 2. The foreperson requested more evidence for the jury. Later, the foreperson explained that the jury had resolved the issue with count 2 but had not reached agreement on count 1. The foreperson requested additional evidence, but the court explained that the jury could not receive any more evidence. The foreperson stated that the jury had taken three to five votes on guilt as to count 1. Initially, the jury was divided 10 to 2, but after discussing the evidence more, the split was 11 to 1.

---

4     Section 1118.1 provides: "In a case tried before a jury, the court on motion of the defendant or on its own motion, at the close of the evidence on either side and before the case is submitted to the jury for decision, shall order the entry of a judgment of acquittal of one or more of the offenses charged in the accusatory pleading if the evidence then before the court is insufficient to sustain a conviction of such offense or offenses on appeal. If such a motion for judgment of acquittal at the close of the evidence offered by the prosecution is not granted, the defendant may offer evidence without first having reserved that right."

14

Another juror interjected, "So there was discussions as to, if we could not agree on the higher, is there—you know, there was some discussion that we could possibly agree on the lesser. But the person that was abstaining from agreeing on the lesser wanted clarification on what would happen."[5] The juror clarified that the jurors wanted to know what would happen if they could not agree. The court explained if the jury could not reach agreement, it would result in a hung jury.

Another juror then asked if they could submit questions to the prosecutor and defense counsel regarding evidence "not presented during trial." The court again explained that the evidence was closed and no more evidence would be provided.

Yet another juror asked if the court would explain the concept of a hung jury. The court responded that a hung jury occurs when there is no verdict on a specific count. The juror then asked, "I mean, when you say there's no verdict, does that mean it's dropped?" The court told the jurors not to worry about what happens with hung counts.

At trial, Doe testified as to general and specific acts by Ochoa and the prosecutor did not make an election as to which act corresponded with which count. The jury returned general verdicts that did not identify the incidents that provided a basis for the convictions.

---

[5]    As to count 1, the jury was instructed on the lesser included offense of attempted aggravated sexual assault. The jurors were instructed that they could not convict on this lesser crime unless they agreed Ochoa was not guilty of aggravated sexual assault. The jurors were also instructed that they could not convict Ochoa of the lesser crime unless they all agreed he was not guilty of the greater crime.

## C. Analysis

We review whether a trial court improperly failed to instruct on a lesser included offense de novo. (*People v. Souza* (2012) 54 Cal.4th 90, 113; *People v. Brown* (2016) 245 Cal.App.4th 140, 152.) A court is obligated to instruct the jury on a lesser included offense only if there is substantial evidence supporting it. (*People v. Breverman* (1998) 19 Cal.4th 142, 154, 162 (*Breverman*).) Substantial evidence is " ' "evidence that a reasonable jury could find persuasive" ' [citation], which, if accepted, ' "would absolve [the] defendant from guilt of the greater offense" [citation] *but not the lesser*.' " (*People v. Cole* (2004) 33 Cal.4th 1158, 1218; see *Breverman*, at p. 162.) We do not evaluate the credibility of witnesses, and we resolve doubts in favor of giving the instruction. (*Breverman*, at pp. 154, 162; see *People v. Strozier* (1993) 20 Cal.App.4th 55, 63.)

In the instant matter, the People all but concede that nonforcible sodomy and nonforcible oral copulation of a minor are lesser included offenses of aggravated sexual assault of a minor by forcible sodomy and forcible oral

16

copulation.[6] Thus, we will focus on the People's two primary arguments regarding why the court's failure to give the lesser included offense instructions are not reversible error: (1) substantial evidence did not support the giving of the instructions on the lesser included offenses and (2) even if the court committed error here, it was harmless.

Regarding the issue of whether substantial evidence supports the giving of the instructions on the lesser included offenses, the parties largely retreat to their substantial evidence arguments concerning count 1. Thus, Ochoa contends that the evidence "was far from overwhelming," and the People maintain, "[n]o reasonable juror could conclude that [Ochoa] engaged in non-forcible sodomy and non-forcible oral copulation with John Doe, but not forcible sodomy and forcible oral copulation by means of duress." Ochoa specifically points to the shower incident for count 1 and the ice cream

---

[6] The People provide some cursory analysis wherein they argue that, under a 2006 amendment to section 269, nonforcible sodomy and nonforcible oral copulation of a minor are not necessarily included offenses of aggravated sexual assault of a minor by forcible sodomy and forcible oral copulation. However, they note that, at trial, the prosecutor did not prove or argue that counts 1 and 2 occurred after the 2006 amendment. Instead, the information stated that those two offenses occurred between December 14, 2000 and December 13, 2008. In fact, although Ochoa points to the shower incident as being the basis of count 1 and the ice cream incident constituting count 2, the People do not necessarily agree. In any event, because it cannot be established on the record before us (especially as the jury was not asked to decide the issue), when count 1 and count 2 were committed, we do not consider the People's argument that the 2006 amendment to section 269 may apply for purposes of our analysis on the lesser included offense issue. (See *People v. Rojas* (2015) 237 Cal.App.4th 1298, 1306, quoting *People v. Hiscox* (2006) 136 Cal.App.4th 253, 256 [" '[I]t is the prosecution's responsibility to prove to the jury that the charged offenses occurred on or after the effective date of the statute providing for the defendant's punishment' "].)

17

incident for count 2.  Nonetheless, the People emphasize that the prosecution did not link a specific act with either counts 1 or 2.

Although the parties largely seem to be arguing past each other, we observe that the People's argument gives us pause.  They note that the prosecution did not offer any specific act to satisfy count 1 or 2.  Therefore, any encounter between Ochoa and Doe in which sodomy or oral copulation occurred could have been the basis for those two counts respectively.  Such acts also could have formed the bases of the offenses for counts 3 through 10 as to Doe.  While the court did find evidence sufficient to support convictions for counts 1 and 2, it also observed that, "given the state of the evidence," instructions of the lesser included offenses for counts 3 through 10 should be given.  Accordingly, on the record before us, we see nothing that distinguishes counts 1 and 2 from counts 3 through 10 in terms of providing jury instructions regarding lesser included offenses.  Alternatively stated, if the evidence supported the giving of instructions regarding the lesser included offenses as to counts 3 through 10 and the prosecution did not distinguish between acts that could have been the basis of counts 1 and 2 as opposed to counts 3 through 10, we conclude it was error not to provide instructions for the lesser included offenses of nonforcible sodomy and nonforcible oral copulation for counts 1 and 2.  We thus turn to whether this error was harmless.

The parties agree on the standard for evaluating prejudice here.  The "generally applicable California test for harmless error" is set forth in *People v. Watson* (1956) 46 Cal.2d 818.  (*Breverman*, *supra*, 19 Cal.4th at p. 176.)  Under the *Watson* test, we deem an error harmless unless it is "reasonably probable" the outcome would have been different in the absence of the error.  (*Watson*, at p. 836.)  Our high court has " ' "made clear that a

18

'probability' in this context does not mean more likely than not, but merely a reasonable chance, more than an abstract possibility." ' " (*Richardson v. Superior Court* (2008) 43 Cal.4th 1040, 1050, italics omitted.) And several California appellate courts have concluded that a hung jury, as opposed to an acquittal, is a more favorable outcome for purposes of harmless error review under *Watson*. (See *People v. Doane* (2021) 66 Cal.App.5th 965, 984 ["Here, the question is whether it is reasonably probable that, absent the errors, at least one juror would have voted to acquit Doane of gross vehicular manslaughter"]; *People v. Dryden* (2021) 60 Cal.App.5th 1007, 1025 ["[W]e consider whether it is reasonably probable that one or more jurors would conclude that the prosecution failed to meet its burden of proving beyond a reasonable doubt that defendant did not act in lawful self-defense if this case were tried without the erroneous admission of the prior acts evidence"]; *People v. Zaheer* (2020) 54 Cal.App.5th 326, 341 ["[T]here is a reasonable chance that at least one juror relied on the prospect of a different car to reconcile his or her doubts about the reliability of Martha's testimony"]; cf. *People v. Winkler* (2020) 56 Cal.App.5th 1102, 1171 [finding error harmless because there was no reasonable probability that "even a hung jury would have been achieved"].)

Here, the record indicates that the issue of duress as to counts 1 and 2 was a close call. Ochoa explicitly challenged whether evidence existed supporting a finding of duress as to counts 1 and 2. Further, the jury initially indicated that it had reached a verdict on counts 3 through 10 but could not agree as to counts 1 and 2. Although the next day the jury reached a verdict as to count 2, it remained unsure as to count 1. The foreperson asked for additional evidence, but the court explained that the jury had to rely only on the evidence it had received. The court then asked the foreperson whether

19

further discussions could lead to a verdict on count 1, and the foreperson replied that he did not believe a verdict could be achieved. To this end, the foreperson indicated that the jury had voted on count 1 three to five times with an original split of 10 to 2, which had become 11 to 1. Additionally, other jurors asked questions about the lesser included offense of attempt and what would happen if the jury could not reach a verdict on count 1.

The People minimize the significance of the jury's questions and inability to initially reach a verdict on counts 1 and 2 by emphasizing that the jury found Ochoa guilty of eight counts of forcible lewd conduct, which required the jury to find that Ochoa committed the acts by means of "force, violence, duress, menace, or fear of immediate and unlawful bodily injury to the child or someone else." (CALCRIM No. 1111.) The People also point out that the jury reached the convictions on the forcible lewd conduct despite being provided with an instruction on the lesser included offense of lewd conduct.

Yet, the forcible lewd conduct offenses are not the same as the offenses for aggravated sexual assault of a child by forcible sodomy and aggravated sexual assault of a child by forcible oral copulation. Indeed, the difference is borne out by the jury's questions regarding reasonable doubt as to counts 1 and 2. Moreover, the issue is all the more murky because, at trial, the prosecutor did not offer any specific acts to satisfy counts 1 and 2 but, instead, allowed the jury to select what acts satisfied counts 1 through 10. And, as the court acknowledged, the state of the evidence, at least as to the forcible lewd conduct offenses, required the giving of the instruction regarding the lesser included offense of lewd conduct because "[t]here could be an argument that the [section] 288 offense was not done with force or duress or any one of those other elements that would be necessary." The

20

court's comments suggest that the evidence of force or duress was not overwhelming.[7]  Moreover, as the acts proving counts 1 and 2 could be interchangeable with the acts constituting counts 3 through 10, we are all the more bothered by the trial court's failure to give the jury instructions as to the lesser included offenses of nonforcible sodomy and nonforcible oral copulation.

Nor does our analysis change if we consider that the jury was given an instruction for the lesser included offense of attempted aggravated sexual of a child by forcible sodomy.  That lesser included offense hinged on whether Ochoa actually penetrated the victim not whether duress was proved.

In short, on the record before us, we conclude that there is a reasonable chance that Ochoa could have achieved a more favorable result had the instructional error not occurred.  In reaching this conclusion, we agree with the other appellate courts who have concluded that a hung jury constitutes a more favorable result under the law.  (See *People v. Doane, supra,* 66 Cal.App.5th at p. 984; *People v. Dryden, supra,* 60 Cal.App.5th at p. 1025.) That said, it appears that the evidence overwhelmingly supports convictions for nonforcible sodomy (§ 286, subd. (c)(1)) and nonforcible oral copulation (§ 287, subd. (c)(1)).

---

[7]    The fact that we found substantial evidence supporting the convictions under counts 1 and 2 does not undermine our analysis of prejudice here.  For a substantial evidence review, we must look at the evidence in a light most favorable to the jury's verdict.  (*Johnson, supra,* 26 Cal.3d at p. 578.)  For our harmless error review, we employ a different standard to ascertain whether there was a reasonable chance a more favorable result could be achieved absent the error.  (*Richardson v. Superior Court, supra,* 43 Cal.4th at p. 1050.)

## DISPOSITION

Ochoa's convictions under counts 1 and 2 are reversed. If the People do not bring Ochoa to retrial on these counts within the time set forth in section 1382 (i.e., 60 days after the filing of the remittitur unless good cause is shown for a different period or Ochoa waives the 60-day requirement), the court shall proceed as if the remittitur constituted a modification of judgment to reflect convictions under sections 286, subdivision (c)(1) (count 1) and 288, subdivision (c)(1) (count 2).

We remand this case back to the superior court to resentence Ochoa consistent with this opinion, subject to any retrial on counts 1 and 2. In all other aspects, the judgment is affirmed.

HUFFMAN, J.

WE CONCUR:

McCONNELL, P. J.

DO, J.

22